STATE of Indiana ex rel. LaVerne DUN-
LAP, Appellant (Plaintiff Below),

v.

Robert J. CROSS, Raymond H. Rowe and Larry Kramer, Individually and as Members of the Police Civil Service Commission, David LaRocco, Individually and as Chief of the Police Department, and City of Michigan, Indiana, Appellees (Defendants Below).

No. 3-579A125.

Court of Appeals of Indiana,
Third District.

April 28, 1980.

Hilbert L. Bradley, Gary, for appellant.

Steven C. Snyder, Michigan City, for appellees.

STATON, Judge.

LaVerne Dunlap, a Michigan City police officer, sought judicial review of a decision of the Police Civil Service Commission[1] which suspended her from the police force, without pay, for a period of 10 working days. The LaPorte Superior Court granted a motion to dismiss as to defendants Robert J. Cross, Raymond H. Rowe, and Larry Kramer, individually and as members of the Police Civil Service Commission and David LaRocco, individually and in his capacity as Police Chief.[2] It granted a motion for summary judgment on behalf of the City of Michigan City.

On appeal, Dunlap raises three issues for our consideration:

(1) Were her procedural due process rights to prior notice and a hearing violated when she was suspended without pay for a period of 10 working days?

(2) Did she have a cause of action for willful and malicious deprivation, independent of IC 1971, 18–1–11–3?

(3) Did the trial court err in failing to order a transcript and enter special findings of fact?

1. The trial court found that, on May 4, 1978, the Police Civil Service Commission ratified this action taken by the Chief of Police, pursuant to his delegated authority, on March 8, 1978.

2. IC 1971, 18–1–11–3 provides, in part:
"Such city shall be named as the sole defendant and the plaintiff shall cause summons to

We affirm.

The facts relevant to our disposition of the case indicate that Officer Dunlap was observed by fellow police officers playing pool in a local tavern on March 4, 1978 between 7:30 p. m. and 3 a. m. the following morning. At that time, Officer Dunlap was scheduled to be on duty, but had requested a sick leave absence. On March 8, 1978, she received a letter from the Chief of Police which recited these facts and informed her that she had been charged with neglect of duty and suspended, without pay, for a period of 10 working days. The letter also stated that additional disciplinary action was being sought before the Police Civil Service Commission. The Commission conducted a hearing and heard evidence on the question of whether additional disciplinary action was appropriate. On May 4, 1978, it entered an order denying the Chief of Police's request for additional disciplinary action. Dunlap instituted this action on May 25, 1978.

I.

Due Process Rights

(a) IC 1971, 18–1–11–3

Dunlap bases her claim upon the provisions found in IC 1971, 18–1–11–3, the firefighters' and police officers' Tenure Act. The pertinent section provides:

"Any member of such fire or police force who is dismissed from such force, as aforesaid, or is suspended therefrom *for any period in excess of ten [10] days shall have the right to appeal* to the circuit court or superior court of the county in which such city is located, from such decision of dismissal or suspension by said board, but shall not have the right of appeal from any other decision. *Such* issue as in other cases against such city. The board of public safety or the board of metropolitan police commissioners, or the members thereof, shall not be made parties defendant to any such complaint, but shall be bound by such service upon the city and the judgment rendered by the court."

*appeal shall be taken by such party filing in such court; within thirty [30] days after the date such decision is rendered,* a bond as herein required and a verified complaint stating in concise manner the general nature of the charges against him or her, the decision of the board thereon, and a demand for the relief asserted by plaintiff. . . ." (Emphasis supplied.).

■ It is undisputed that, on March 8, 1978, the Police Chief suspended Dunlap for a period of 10 working days, without pay. The statute, upon which she is relying, clearly states that only the action of the board which results in a suspension "in excess of 10 days" is subject to judicial review. Dunlap has failed to meet this requirement. As a matter of statutory construction, she is not entitled to any sort of judicial review.

Despite these statutory obstacles, Dunlap contends that "the Appellate Courts of this state have jurisdiction and a duty to establish a policy that there are certain instances in which a policeman or fireman is entitled to a judicial review in order to prevent the kind of injustice which occurred in the case at bar." She claims that there is a "dearth of Indiana decisions" on this point; our research indicates otherwise.

The Court in *City of Muncie v. Campbell* (1973), 156 Ind.App. 59, 295 N.E.2d 379, considered a suspension "for a period not exceeding ten (10) days"[3] in conjunction with further disciplinary action. In approving the use of such suspension, it said at 382:

"It is our opinion that the salutary purpose . . . is two-fold: First, to allow expeditious treatment of minor infractions; and secondly, to allow immediate suspension of an officer who is suspected of more serious misconduct, in order to remove him from the responsibilities of his position in the interval between the occurrence of the misconduct and the full hearing by the Commission. The necessity of removing a serious offender from his sensitive position of authority pending a fair hearing cannot be denied. As appropriately stated in *McElroy v. Trojak* (1959), 21 Misc.2d 145, 189 N.Y.S.2d 824, 826–827:

'Police officers occupy a unique status in the maintenance of law and order in a community and the public interests would be seriously jeopardized in the case of a police officer if he were allowed to be incompetent or charged with misconduct and it was required that he be retained in office pending the hearing of the charges or the preparation and service of the charges. In the case of police officers the power to temporarily and summarily suspend in the case of misconduct or incompetency is absolutely indispensable.' "

Further, in *Dortch v. Lugar* (1971), 255 Ind. 545, 266 N.E.2d 25, the Indiana Supreme Court scrutinized the constitutionality of the disciplinary procedures established for the consolidated police force. It explained that Section 1227[4] provided that the Police Chief may suspend from active service for up to 10 days, without pay, any police officer for cause and noted that this decision was not subject to review. *Dortch, supra,* at 46. At the conclusion of the Court's lengthy discussion of the disciplinary procedures established for the police force,[5] it stated at 46:

"We have taken the pains to outline the disciplinary procedures provided for by the Act to demonstrate the safeguards afforded a member of the consolidated police force subject to such discipline. It is readily apparent that these procedures far exceed those *thought to be required* by text writers in the area: [Emphasis original]

---

3. See IC 1971, 19–1–14–1, which is restricted to Cities of the Second Class located in counties of not less than 128,000 nor more than 138,000.

4. This section is found at IC 1971, 18–4–12–27 (Burns Code Ed.).

5. The constitutionality of these procedures, as well as the reorganization of local, municipal and county government by the "Unigov" bill was challenged here.

'In the absence of legal limitations, policemen and firemen are removable at pleasure, without cause or hearing. However, the removal and suspension of policemen and firemen are ordinarily prescribed and regulated in more or less detail by the controlling local laws and rules authorized to be promulgated and in force thereunder.' 4 McQuillin, Municipal Corporations § 12.230b. (1968).

"We are unaware of any constitutional provision guaranteeing the right to be a police officer or to be a police officer free from disciplinary action. *It is our considered opinion that the disciplinary procedures provided for by the Act respecting the discipline of members of the consolidated police force are eminently reasonable and beyond constitutional attack.*" (Emphasis supplied)

Finally, the Court of Appeals in *Town of Speedway v. Nilson* (1979), Ind.App., 395 N.E.2d 1292, recently addressed this issue. It decided that police officer Nilson did not have the right to appeal his suspension since it was not for a period in excess of 30 days. The Court found that the 30-day suspension did not fall within the scope of reviewable board actions as defined by statute.[6]

We agree with the foregoing authority and conclude that IC 1971, 18–1–11–3 precludes judicial review of suspensions not "in excess of 10 days."

### (b) Constitutional Considerations

Dunlap also alleges a constitutional deprivation of due process of law, independent of her statutory claim. She argues that, prior to the Chief's imposition of his 10-day suspension order, she was entitled to some type of Fourteenth Amendment due process. This is not the case.

■ Fourteenth Amendment due process rights apply only to liberty or property interests. *Town of Speedway v. Harris* (1976), Ind.App., 346 N.E.2d 646. Due to the nature of this case, we will focus upon the property interest. In order to utilize the due process protections, Dunlap must show us that she had some property interest which was protected by procedural due process. *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Gansert v. Meeks* (1979), Ind.App., 384 N.E.2d 1140. This property interest is not created by the Constitution. *Board of Regents, supra; Town of Speedway, supra.* It may, however, arise from a statute, ordinance or contract. *Gansert, supra.* The sufficiency of her claim of entitlement to the property interest must be made by reference to state law. *Bishop v. Wood* (1976), 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684; *McQueeney v. Glenn* (1980), Ind.App., 400 N.E.2d 806.

In *Jenkins v. Hatcher* (1975), 163 Ind. App. 95, 322 N.E.2d 117, a firefighter, who had been demoted in rank, complained that his due process rights had been violated by the proceedings. IC 1971, 18–1–11–3, as it then existed, did not protect a firefighter or policeman from demotion. The Court, therefore, held that Jenkins' rights to prior notice and a hearing had not been violated because, according to statute, no process was due him.

■ Dunlap's due process claims, like those in *Jenkins, supra,* are grounded in the statutory scheme at bar. Without the protections of IC 1971, 18–1–11–3, Dunlap could be suspended or summarily discharged without any sort of due process. It is this statute that gives the property interest to her; its dimensions are precisely defined. Dunlap has a legitimate claim to continued employment at a particular rank. She has a protectable property interest in job tenure, promotions, demotions and suspensions, in excess of 10 days. The statute and state law, however, fail to point us to the conclusion that a suspension not "in excess of 10 days" is a protectable property interest.

---

**6.** See IC 1971, 19–1–25–2, which provides, in part that: "any member of such police force who shall be dismissed or suspended therefrom for any period in excess of thirty (30) days shall have the right of appeal . . . ."

Dunlap urges us to create a procedural right to review suspension not "in excess of 10 days." This we will not do. Such an action, on our part, is contrary to the statute, and more properly, becomes the function of the legislature.[7]

## II.

### Willful Action

 Dunlap claims her suspension for 10 days was a willful and malicious action on the part of the Police Chief. She recognizes that this act was discretionary and one for which he is not liable, if it was undertaken in good faith. *Board of Commissioners of Delaware County v. Briggs* (1975), Ind.App., 337 N.E.2d 852. Her bald assertion that his action here was "willful and malicious" will not make it so. She fails to support her claim; we will not consider such a bare contention any further.

## III.

### Findings of Fact

Finally, Dunlap claims that the trial court erred in failing to order a transcript and in failing to enter special findings of fact. We note that the transcript, requested by Dunlap, is of the hearing held on May 4, 1978 to determine the need for additional disciplinary action. Even though the decision was made to deny the Chief of Police's request for such action, Dunlap seeks this transcript for appeal purposes. Her reasoning is fallacious. This hearing had little to do with her suspension; it was concerned with whether Dunlap's conduct merited further disciplinary measures. A transcript of this hearing would be of limited utility in deciding whether, as she claims, "the suspension was for any cause other than politics, violation of due process and equal protection, or any other illegal or constitutional rights." As noted earlier, judicial review of a decision to suspend for not "in excess of 10 days" is precluded by statute.

Additionally, Dunlap claims that the trial court erred in failing to enter special findings of fact. She does not claim that she moved for special findings and the trial court did not, on its own motion, elect to make any. It is clear that Ind. Rules of Procedure, Trial Rule 52(A) does not require the court to make such findings. Therefore, we will not consider the court's failure to make findings as error.

Having found no error, we affirm the judgment of the trial court.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.

---

7. The legislature has already considered the disciplinary measure of suspension as evidenced by its amending of the statute to provide for the appeal of suspensions exceeding 10 days. Before this amendment, suspensions in excess of 30 days were appealable. *Jenkins, supra,* at 119, fn. 1.